IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NICHOLAS RYAN JONES,                    :
                                        :
        Plaintiff,                      :
                                        :
vs.                                     :
                                        :       CIVIL ACTION 15-0650-M
CAROLYN W. COLVIN,                      :
Social Security Commissioner,           :
                                        :
        Defendant.                      :


<u>MEMORANDUM OPINION AND ORDER</u>


        In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling denying claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 15).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order judgment in accordance with 28 U.S.C. §
636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc.
20).  Oral argument was waived in this action (Doc. 21).  After
considering the administrative record and the memoranda of the
parties, it is **ORDERED** that the decision of the Commissioner be
**AFFIRMED** and that this action be **DISMISSED**.

        This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was thirty-one years old, had completed a ninth-grade education (Tr. 59), and had previous work experience as a heavy equipment operator and construction equipment mechanic (Tr. 80). Plaintiff alleges disability due to a history of pseudoseizure activity, a somatoform disorder, and an intellectual disability (Doc. 15 Fact Sheet).

The Plaintiff applied for disability insurance and SSI on April 23, 2012, alleging a disability onset date of December 20, 2011 (Tr. 27, 246-61). An Administrative Law Judge (ALJ) denied benefits, determining that although Jones could not return to his past work, there were specific medium-exertion jobs that he could perform (Tr. 27-37). Plaintiff requested review of the hearing decision (Tr. 23), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Jones alleges that the Appeals Council failed to properly consider newly-submitted evidence of two different impairments (Doc. 15). Defendant has responded to—and denies—these claims (Doc. 16).

The Court's summary of the relevant record medical evidence follows.

On August 3, 2011, Jones went to Wayne General Hospital with complaints of low back pain following a seizure while driving (Tr. 383).

On October 4, 2011, Jones went to the Washington County Hospital Emergency Department after being hit in the upper lip with metal while working on motor parts (Tr. 342-44).  He received sutures and was told to take Tylenol.

On June 12, 2012, Plaintiff was seen by Neurologist Todd D. Elmore for complaints of seizures over the past six-to-eight years (Tr. 354-56).  The seizures caused confusion, aggressiveness, and Jones's not making any sense; he was no longer working, but it was not due to the seizures.  Elmore noted that Plaintiff was alert and oriented, had intact memory, and had normal attention span and concentration; receptive and expressive language skills were normal.  Jones had an adequate fund of knowledge concerning current and past events and adequate insight for his age.  The Neurologist's impression was probably complex partial seizure disorder with rare secondary

3

generalization accompanied by compliance issues; it was his opinion that Jones could work a sedentary job so long as a seizure would not endanger him or others.  Elmore recommended further testing.

On May 10, 2013, Jones went to Victory Health Center for a seizure; though he had taken medication previously, he had not taken anything since 2010 (Tr. 357-58).  Plaintiff was instructed to stop smoking and to take his seizure medications.

On August 30, 2013, Plaintiff went to Victory Health Partners following a seizure (Tr. 389).

On October 9, 2013, Psychologist John W. Davis examined Jones at the request of the Social Security Administration (Tr. 391-98).  Plaintiff reported experiencing seizures or "spells" for the previous ten-to-twelve years that occur daily, sometimes fifteen times a day; his wife had told him that sometimes he was "loving" while at others he was quite aggressive.  Medications had decreased the severity of the spells, but had not stopped them.  Davis noted that Jones had normal communication and mood with no indications of deficits in concentration or attention; there were no loose associations, tangential or circumstantial thinking, or confusion.  Judgment and insight were considered fair.  Jones spent his days doing yard work and gardening; his intellectual level was thought to be low average.  Psychologist Davis indicated that Plaintiff had a Somatoform Disorder, NOS;

his prognosis, with treatment, was guarded.  Davis also made the following findings:

> The claimant's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions is moderately to markedly impaired at this time due to the reported unpredictable nature of pseudoseizure-type episodes.
> The claimant's ability to interact appropriately with the public, supervisors, and co-workers; and to respond appropriately to usual work situations and to changes in routine setting is moderately impaired at this time due to reported aggressive behavior during pseudoseizure-type episodes.

(Tr. 395).

In her decision, the ALJ found that Jones had severe impairments of a history of pseudoseizure activity and somatoform disorder (Tr. 29).  She went on to find that Plaintiff had not demonstrated that he met the requirements of any of the disability listings (Tr. 30).  The ALJ then found that Jones could perform a reduced range of medium-exertion work, naming specific jobs that he could perform (Tr. 31-36). In evaluating the evidence, the ALJ rejected the testimony of Plaintiff and his wife (Tr. 32-34).[1]

---

[1]Plaintiff has asserted that the ALJ did not make explicit findings regarding his credibility (Doc. 15, p. 12).  Though technically true, the ALJ did point out that his testimony was inconsistent with reports given to his doctors and at odds with his professed activities (Tr. 32-33).

This concludes the Court's summary of the evidence.

In bringing this action, Jones claims that the Appeals Council failed to properly consider newly-submitted evidence of two different impairments (Doc. 15).  More specifically, Plaintiff asserts that the new evidence should have led the Appeals Council to remand this action to the ALJ to determine whether he suffered from the severe impairments of seizure disorder and intellectual disability.

The Court notes that the Appeals Council considers additional evidence submitted by a claimant if it is new, material, and chronologically relevant.  20 C.F.R. § 404.970(b). The Appeals Council must then decide if the new information renders the ALJ's "action, findings, or conclusion [] contrary to the weight of the evidence currently of record."  *Id.*  The Eleventh Circuit Court of Appeals has held that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).  The new evidence presented to the Appeals Council was as follows.

On July 10, 2014, Dr. Larry Thead wrote a "To Whom It May Concern" letter indicating that he had recently begun treating Jones for a ten-year history of seizures during which the

seizures had never been under control (Tr. 409).  Seizure activity had been witnessed in his clinic and Jones had begun taking an anti-seizure medication, Dilantin, again.  Thead was attempting to get an additional opinion from a neurologist.  The Doctor went on to state the following:  "It is my opinion that this patient's seizures have not been under consistent control and that he is currently totally disabled because of this" (Tr. 409).

On November 20, 2014, Dr. Sid Crosby wrote a "To Whom It May Concern" letter, stating that he had examined Plaintiff once and that he had a normal neurological exam though he had a laceration to his forehead due to a recent seizure (Tr. 411).

On December 12, 2014, Dr. Diana C. Hengartner with the University of South Alabama College of Medicine Department of Neurology indicated that Jones had been having at least two-to-three seizures per week (Tr. 413-14).[2]  A recent hospitalization had located the seizures in the left anterior temporal lobe; Plaintiff was thought to be a good surgical candidate.  A brain MRI showed left hippocampal sclerosis.

On March 13, 2015, Clinical Neuropsychologist Melissa Ogden noted that a recent PET scan showed hypometabolic activity in the left temporal lobe; she noted that apart from his seizures,

---

[2]Dr. Hengartner's assessment and plan were reviewed and approved by Associate Professor of Neurology, Dr. Juan Ochoa (Tr. 414).

he was healthy (Tr. 415-17).  Jones reported earning Cs and Ds

in school "but denied any history of grade retention, learning

difficulties, enrollment in special education, or tutoring;" he

further reported no difficulties in managing all aspects of

independent daily living (Tr. 415).  Thought processes were

logical and goal directed; affect was appropriate.  Jones

underwent the Wechsler Abbreviated Scales of Intelligence

(hereinafter *WASI*) on which he scored a verbal IQ of 65, a

performance IQ of 99, and a full scale IQ of 79; he also

underwent several other tests.  The Neuropsychologist provided

the following statement about his test results:

> Mr. Jones demonstrated cognitive
> weakness in the areas of language skills,
> with below expectation performances on tests
> of vocabulary, verbal abstraction,
> confrontation naming, and semantic verbal
> fluency.  His scores on other measures were
> within expectation for his age and education
> level, including his performances on
> measures of verbal and visual memory.  His
> verbal memory performances were generally
> low average to average and not significantly
> discrepant from his visual memory scores.
> The overall pattern of results is not
> suggestive of lateralized temporal lobe
> functions.  However, he did demonstrate some
> degree of language-related difficulty, which
> may represent extra temporal dominant
> hemisphere inefficiency.  Given his strong
> performances on some verbal memory measures
> (assuming left hemisphere language
> dominance), he may be at risk for a decline
> in verbal memory capability following a left
> temporal lobectomy.

(Tr. 417).[3]

The Court notes that the Appeals Council is not required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." *Mitchell v. Commissioner of Social Security Administration*, 771 F.3d 780, 784 (11th Cir. 2014). However, the Council is required "to apply the correct legal standards in performing its duties." *Id.*

The Appeals Council stated that it considered the new evidence and found no basis for changing the ALJ's decision (Tr. 2). No other explanation was given. The Court will examine the new evidence to determine if that decision was error, starting with the evidence related to Plaintiff's seizures.

Dr. Thead's letter stated that Jones was a recent patient and that the Doctor had adjusted his medications (Tr. 409). He noted that someone in the office had seen seizure activity. Thead indicated that Plaintiff was disabled.

Dr. Crosby's letter stated that the one neurological exam he had conducted was normal (Tr. 411).

Dr. Hengartner stated that the location of the seizures had been established and noted that Jones had experienced five seizures over the course of the previous month (Tr. 413).

---

[3]Plaintiff submitted other evidence to the Appeals Council that was rejected as being unrelated to his state of disability as of April 23, 2014, the date of the ALJ's decision (Tr. 2). Jones has made no arguments regarding that evidence (*see* Doc. 15).

Plaintiff had left hippocampal sclerosis.  The Doctor further stated that surgery was indicated.

Jones has argued that the Appeals Council should have remanded the action for a determination as to whether he had the severe impairment of seizure disorder and whether it met the requirements of Listing 11.03.  The requirements of Listing 11.03 are as follows:

> *Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.*  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.03 (2015).

The Court first notes that the ALJ considered Plaintiff's seizure activity in her decision, although it was referenced as pseudoseizure activity.  As such, it was not necessary for the Appeals Council to remand the action back for the ALJ to consider whether the impairment was a seizure disorder.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of any severe impairment, whether or not it qualified as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify

as severe, is enough to satisfy the requirement of step two" of the sequential analysis).  The Court finds that the addition of a specific diagnosis would not have changed the ALJ's analysis of the impairment.

The Court further finds that the new evidence does not demonstrate that Jones meets the requirements of Listing 11.03 in that there is no detailed description in it of a typical seizure; the ALJ already rejected the descriptions provided by Plaintiff and his wife.  Furthermore, the evidence does not demonstrate that Plaintiff was having the seizures in spite of the fact that he has, for a period of at least three months, followed a medical regimen.  The ALJ noted Jones's non-compliance with his prescribed medications.  Furthermore, Dr. Thead's suggestion that Plaintiff was disabled does not make it so.

The Court finds no merit in Plaintiff's claim that the Appeals Council committed error in deciding not to remand the action back to the ALJ for consideration of the evidence regarding his seizures.  The Court cannot say that the ALJ's decision would be changed by the evidence submitted to the Appeals Council.

The Court will now consider the evidence provided to the Appeals Council regarding intellectual disability.

Neuropsychologist Ogden's notes report Plaintiff's

statement that he denied having to repeat a grade, having learning or attention difficulties, or being enrolled in special education classes (Tr. 415-17). Jones scored a Verbal IQ of 65 on the WASI, but the results of the multiple tests given were generally in the average or low average range; Ogden said that Plaintiff's global intellectual skills were in the borderline range.

Plaintiff asserts that evidence provided to the Appeals Council could have been found to meet the requirements for Listing 12.05C. The introductory notes to Section 12.05 state that "[i]ntellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015). Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2015).

The Court further notes that although the regulations require that Plaintiff demonstrate he suffered "deficits in adaptive behavior" before he turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015), the Eleventh

Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that mental retardation is a condition that remains constant throughout life."  The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two."  *Hodges*, 276 F.3d at 1266.  However, the presumption is rebuttable.  *Hodges*, 276 F.3d at 1267.

Jones has provided an IQ score that, on its face, satisfies one of the requirements of Listing 12.05C.  However, Plaintiff's activities of daily living would, most likely, provide the rebuttal of any presumption that he suffered deficits in adaptive functioning while growing up.  This is reasonable to believe in light of the ALJ's rejection of Plaintiff's statement of his symptoms in light of these activities (Tr. 32-33).  Furthermore, Jones's ability to perform medium-exertion, skilled work (*see* Tr. 35) would not, likely, go unnoticed by the ALJ in his evaluation of Jones's intellectual abilities.

The Court finds no merit in Plaintiff's claim that the Appeals Council committed error in deciding not to remand the action back to the ALJ for consideration of the evidence regarding his intellectual disability.  The Court cannot say that the ALJ's decision would be changed by the evidence

submitted to the Appeals Council.

Jones raised two different claims in bringing this action. Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 28th day of July, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

14